**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Harold Shirley,

Plaintiff,

v.

Michael McGinn, individually and in his capacity as an officer with the Saint Paul Police Department,

Defendant.

Civil No. 10-2124 (DWF/FLN)

**MEMORANDUM OPINION AND ORDER**

---

Andrew T. Jackola, Esq., Andrew T. Jackola, PLC; and Jean R. Roth, Esq., counsel for Plaintiff.

Cheri M. Sisk, Assistant St. Paul City Attorney, St. Paul City Attorney's Office, counsel for Defendants.

---

## INTRODUCTION

This matter is before the Court on a Motion for Summary Judgment brought by Defendant Michael McGinn ("Officer McGinn"). In his Complaint, Plaintiff Harold Shirley asserts claims for excessive force under 42 U.S.C. § 1983 against Officer McGinn in both his individual and official capacities and a claim for punitive damages against

Officer McGinn in his individual capacity.[1] For the reasons set forth below, Officer McGinn's motion is granted in part and denied in part.

**BACKGROUND**

On January 21, 2010, Officer McGinn was working as an off-duty police officer at St. Joseph's Hospital.[2] (Doc. No. 28, Sisk Aff. ¶ 5, Ex. D ("McGinn Depo.") at 80, 89.) At about 7:30 p.m., Shirley, who was living at a nearby homeless shelter, was in urgent need of a bathroom. (Doc. No. 31, Jackola Aff. ¶ 2, Ex. A ("Shirley Depo.") at 51, 90.)[3] While looking for a bathroom, Shirley encountered a hospital security guard, Kevin McBride, who told Shirley that he could not use the bathroom if he was not a patient. (Jackola Aff. ¶ 5, Ex. D ("McBride Incident Report") at 2; Shirley Depo. at 99.) McBride escorted Shirley to the emergency room. (Shirley Depo. at 100.) Officer McGinn was at the security desk in the emergency waiting room when McBride and Shirley entered. (McGinn Depo. at 89.) McBride informed Officer McGinn that Shirley was in the

---

1 Specifically, Shirley alleges the following: Count I—Unreasonable Use of Force (42 U.S.C. § 1983) (as to Officer McGinn in his personal capacity); Count II—Punitive Damages (as to Officer McGinn in his personal capacity); and Count III—Unreasonable Use of Force (42 U.S.C. § 1983) (as to Officer McGinn in his official capacity).

2 The events of the January 21, 2010 incident were partially caught on tape by a surveillance camera at St. Joseph's hospital. (Sisk Aff. ¶ 2, Ex. A.) The Court has reviewed the video.

3 Shirley asserts that he had been admitted to the hospital the prior week and had been told by a treating physician that he could use the hospital bathroom when needed. (Shirley Depo. at 94-95.)

building attempting to use a bathroom and that McBride had told Shirley that he could not use the hospital's bathrooms because they were not for public use. (*Id*.) Shirley then spoke to a triage nurse. (*Id*.) Shirley claims that he asked the nurse to use the bathroom and that the nurse authorized such use and pointed Shirley towards the bathroom. (Shirley Depo. at 100, 102.) Shirley contends that McBride blocked his way to the bathroom and ordered him to leave. (*Id*. at 104-05.)

Shirley left the emergency room and proceeded to enter another building at St. Joseph's, where he used the bathroom. (*Id*. at 107.) McBride and another hospital security guard, Korrin Pajak, encountered Shirley as he was leaving the restroom. (*Id*. at 111-12; Jackola Aff. ¶ 6, Ex. E ("Pajak Incident Report") at 1.) At some point later, Officer McGinn received a radio call from Pajak requesting assistance. (McGinn Depo. at 91.) Officer McGinn was informed that Shirley was combative. (*Id*.) Officer McGinn walked outside to the second building to assist McBride and Pajak. (*Id*.)

Officer McGinn met up with McBride and Pajak outside the second building, where Shirley was sitting on a ledge. (McGinn Depo. at 91; Shirley Depo. at 114, 118.) McBride and Pajak were explaining the hospital's policy on bathroom use to Shirley. (McGinn Depo. at 91; Shirley Dep. at 113, 117-18.) McBride and Pajak explained that Shirley would be charged with trespassing if he returned. (Shirley Depo. at 115.) Officer McGinn claims that he then told Shirley that he had to leave. (McGinn. Depo. at 92.) Shirley claims that Officer McGinn said something insulting. (Shirley Depo. at 118.)

Officer McGinn testified that he moved toward Shirley with the intention of taking him by the elbow to walk him off the property, but that when he reached, Shirley jumped up and swung at him. (McGinn Depo. at 92-93.) Officer McGinn also asserts that he attempted to move away, but that Shirley grabbed onto his jacket. (*Id*.; Shirley Depo. at 123.)

Shirley asserts that Officer McGinn initiated physical contact by hitting Shirley across the face with a closed fist. (Shirley Depo. at 118-121.) Shirley also contends that he tried to dodge Officer McGinn and unsuccessfully tried to grab hold of Officer McGinn's jacket to steady himself. (*Id*. at 122-24.). Shirley denies ever trying to hit Officer McGinn. (*Id*. at 123, 129, 139.)

Shirley contends that Officer McGinn then slammed him to the ground, repeatedly hit him with closed fists around the face and mouth, and continued to hit him about the head and body. (*Id*. at 126-27.) Officer McGinn acknowledges that he delivered two closed-fisted strikes to Shirley's chest area, followed by a knee-strike to the chest, and further admits that when Shirley landed on the ground, he delivered a strike on his shoulder. (McGinn Depo. at 93.) Officer McGinn claims that he used the knee-strike because Shirley was pulling Officer McGinn to the ground and used the shoulder strike to straighten him out while on the ground. (*Id*.)

Once on the ground, Officer McGinn handcuffed Shirley and radioed to an on-duty police officer for assistance. (*Id*. at 94.) Shirley claims that he was kept face down and

cuffed on the cold cement for about fifteen minutes. (Shirley Depo. at 130-31.) Shirley was then taken away by a squad car. (*Id*. at 138-39.)

Shirley alleges that he suffered injuries including ripped stitches in his mouth, a lost tooth, fractured ribs, swelling and bruising on his face, and suspected nerve damage to his wrist. (*Id*. at 120, 132, 134, and 152; Jackola Aff. ¶ 9, Ex. H ("Regions Hospital Medical Records") at 1-4).) Shirley also claims that he suffers from recurring nightmares. (Shirley Depo. at 153.) Shirley was seen at Regions Hospital Emergency Room on January 22, 2010, where he was diagnosed with "acute head injury," "acute lip laceration, superficial" and "acute left 10th rib fracture." (Shirley Depo. at 146-7; Regions Hospital Medical Records at 4.)

## DISCUSSION

### I. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed

'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

**II. Official Capacity Claim**

Shirley asserts a claim for unreasonable use of force against Officer McGinn in his official capacity. Officer McGinn argues that this claim fails as a matter of law and should be dismissed. Claims made against individuals in their official capacities are suits against their public employer. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("A suit against a public employee in [that person's] official capacity is merely a suit against the public employer.") (citation omitted).

It is well-established that a governmental entity cannot be held liable under § 1983 on a *respondeat superior* theory. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978) (concluding that "Congress did not intend municipalities to be held liable unless

action pursuant to official municipal policy of some nature caused a constitutional tort”). Shirley acknowledges that this is not a *Monell* case but asserts that, because he is suing Officer McGinn in both his individual and official capacities, a victory for Shirley would impose liability on both Officer McGinn and the entity that Officer McGinn represents. In support, Shirley cites to *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785 n.2 (1997). In *McMillian*, the Supreme Court considered whether a local government could be liable under § 1983 for the allegedly unconstitutional actions of the County Sheriff in suppressing evidence. 520 U.S. at 783-84. Unlike the present case, the parties in *McMillian* agreed that the sheriff was a “policymaker” for § 1983 purposes, but disagreed whether he was a policymaker for the county or the state. *Id*. at 783. The Supreme Court held that the sheriff represented the state, and not the county, and dismissed the § 1983 claims against the county. *Id*. at 793. The Supreme Court explained that, in *Monell*, it held that a local government is liable under § 1983 for its policies that cause constitutional torts. *Id*. at 784. The Supreme Court went on to explain that, as a policymaker, the sheriff in *McMillian* represented the state when executing his law enforcement duties. *Id*. at 793.

Here, there is no allegation that Officer McGinn is a policymaker for § 1983 purposes. Nor has Shirley made any allegations that would otherwise support a *Monell* claim. Therefore, the Court dismisses Shirley’s § 1983 claim against Officer McGinn to the extent that it is asserted against him in his official capacity.

**III. Individual Capacity Claims and Qualified Immunity**

Shirley asserts claims for excessive force and punitive damages against Officer McGinn in his individual capacity. Officer McGinn contends that there is no genuine issue of material fact with respect to Shirley's excessive force claim and that, in any event, he is protected by qualified immunity.

The right to be free from excessive force is clearly established under the Fourth Amendment's prohibition against unreasonable seizures of the person. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989); *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998). Excessive force claims are analyzed under an "objective reasonableness standard." *Graham*, 490 U.S. at 396-97. The question is whether the officers' actions are "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397. Whether an officer's use of force is reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396. "Circumstances such as the severity of the crime, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect was resisting arrest are all relevant to the reasonableness of the officer's conduct." *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1081 (8th Cir. 1990).

Here, Officer McGinn contends that he moved towards Shirley and reached for his elbow to escort him off hospital property after Shirley was instructed, but failed, to leave

the hospital grounds. Officer McGinn also asserts that Shirley then took aggressive action towards him and grabbed ahold of Officer McGinn's jacket. Officer McGinn asserts that, after Shirley grabbed him, he delivered strikes to Shirley's chest and torso to get him to the ground and under control. Officer McGinn further asserts that, even on the way to the ground, Shirley attempted to turn himself towards Officer McGinn and threatened his safety, so Office McGinn struck Shirley's shoulder to get him flat on the ground. Officer McGinn argues that his factual account is supported by the events captured on the video, and that neither the video nor the booking photos reflect the events or injuries as reported by Shirley.

Shirley, on the other hand, contends that he was non-confrontational when approached by Officer McGinn, that he did not feel free to leave in the presence of Officer McGinn and the two security guards, that he was not given the opportunity to leave, that Officer McGinn initiated a confrontation with him and struck him in the face without provocation, and that Officer McGinn continued to beat him while he was in a defensive position.

Considering all of the facts as they are presented in the record, including the video of the incident, and taking them in the light most favorable to Shirley, the Court is persuaded that there are genuine issues of material fact as to whether the conduct of Officer McGinn violated Shirley's Fourth Amendment right to be free from excessive force. In particular, Shirley maintains that he was not combative with Officer McGinn

and that he was not instructed by McGinn to leave. Shirley also maintains that Officer McGinn initiated contact without provocation. If a jury were to believe Shirley's version of the facts, the jury could reasonably conclude that the force used against him was not reasonable and was therefore unlawful.[4] The Court notes that it is not holding that excessive force was used as a matter of law, but rather that a reasonable jury could find, on the facts presented by Shirley, that unreasonable force was used by Officer McGinn.[5]

Having determined that there is a genuine issue of material fact as to Shirley's excessive force claim, the Court considers whether the alleged constitutional violation was sufficiently established so as to foreclose Officer McGinn's claim of qualified immunity. Qualified immunity shields government officials from civil liability under 42 U.S.C. § 1983. *Wilson v. Layne*, 526 U.S. 603, 614 (1999). A defendant is shielded from civil liability if it is shown that his or her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

---

4 The surveillance video of the incident is inconclusive with respect to several material facts. For example, it is not clear from the video who initiated the contact and whether contact was provoked by either party. The video does not contain audio and therefore it does not provide evidence of what was said just prior to the incident. The video does however show that Officer McGinn approached Shirley immediately prior to the altercation.

5 Officer McGinn argues that the booking photographs of Shirley belie the claim that he was severely beaten. Shirley has submitted evidence that he suffered abrasions and lacerations to his mouth, a head injury, and a fractured rib. The Court finds that

(Footnote Continued on Next Page)

Given the Court's conclusion that questions of material fact remain as to whether the force used by Officer McGinn was reasonable, the Court also determines that Officer McGinn is not entitled to qualified immunity. Noting in particular Shirley's allegation that Officer McGinn initiated contact without provocation, the Court concludes that when viewing the evidence in the light most favorable to Shirley, it would be clear to a reasonable officer that the amount of force used was unreasonable. Accordingly, the question of whether Officer McGinn's actions violated Shirley's Fourth Amendment rights is for a jury.

## CONCLUSION

Based on the records, files and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Officer McGinn's Motion for Summary Judgment (Doc. No. [25]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. Count Three of Shirley's Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE**.

---

(Footnote Continued From Previous Page)
Shirley has presented sufficient evidence of actual injury to survive summary judgment.

b. Counts One and Two of Shirley's Complaint (Doc. No. [1]) survive summary judgment to the extent that they are asserted against Officer McGinn in his individual capacity.

Dated: October 12, 2011

s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge